AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

United States Courts
Southern District of Texas
FILED

*December 13, 2019*

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Adefemi O. ADEKEYE | ) | Case No. '19-MJ-234 |
| | ) | |
| | ) | 4:19mj2312 |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT
### BY TELEPHON OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __September 7, 2019__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1001(a)(1) | Concealing a Material Fact |
| 18 U.S.C. 1028(a)(7) | Fraud |

This criminal complaint is based on these facts:

See affidavit of HSI Special Agent Guy Gino, which is attached and incorporated fully by reference.

☑ Continued on the attached sheet.

By phone
*Complainant's signature*

Guy Gino, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at **9:40** a.m./p.m.

Date: **12/10/2019**

*Stacie Beckerman*
*Judge's signature*

City and state: **Portland, Oregon**

Hon. Stacie F. Beckerman, U.S. Magistrate Judge
*Printed name and title*

**Affidavit in Support of Criminal Complaint
and Application for an Arrest Warrant**

I, Guy Gino, being first duly sworn, depose and say:

**Introduction and Agent Background**

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a) (1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug

Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's Drugs and Vice Division in Portland, Oregon.

2. This affidavit is offered in support of a criminal complaint and arrest warrant for Adefemi O. ADEKEYE. Based upon the forgoing facts, I have probable cause to believe that on or about September 7, 2019, Adefmi O. ADEKEYE knowingly and willingly made a false representation to a Federal Agent of the United States Government. Furthermore, Adefmi O. ADEKEYE possessed and used without lawful authority, a means of identification of another person with the intent to commit unlawful activity that constitutes a violation of Federal law.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

### Applicable Law

4. Pursuant to 18 U.S.C. § 1001(a)(1), it is unlawful for any person to knowingly or intentionally, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsify, conceal, or cover up by any trick, scheme or device a material fact.

5. Pursuant to 18 U.S.C. § 1028 (a)(7), it is unlawful for any person to knowingly or intentionally use an identification document, authentication feature, or false identification document that is or appears to be issued by or under the authority of the United States or a

sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document to knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law.

### **Statement of Probable Cause**

6.  On September 7, 2019 at approximately 1200 hours members of the HIDTA Interdiction Task Force (HIT) were working criminal interdiction at the Portland International Airport (PDX). HIT members were engaged in consensual encounters with passengers after they exited the airplane. HIT members were asking passengers if the police canine could sniff their luggage. Members of HIT were in plain clothes with no exterior police markings with the exception of Officer Groshong's Police K-9 Rex who was wearing a harness that clearly displayed "Police."

7.  Task Force TFO Verbout was watching as people exited the aircraft and entered the lobby. TFO Verbout and Officer Scott Groshong were standing off to the side as not to impede as people walked by. TFO Verbout would pull out his badge and say he was with the Portland Police and asked people if it was alright if the canine sniffed their bags. TFO Verbout then put his badge away under his shirt. TFO Verbout was also watching passenger's behavior as they noticed the police K-9. Most of the passengers who noticed the K-9 would glance towards them and to walk in the same path and manner they were already walking. TFO Verbout and Officer Scott Groshong contacted approximately seven passengers prior to TFO Verbout noticing suspicious behavior exhibited by two subjects. TFO Verbout and other

members of HIT noticed when a male and female exited the gate and entered the concourse. Both individuals looked at the K-9 and immediately turned around and walked to the attendant at the gate. Both continued talking at the gate for approximately one minute.

8. The female then walked towards TFO Verbout and Officer Scott Groshong again. TFO Verbout pulled out his badge and showed it to the female who was identified as Emyni Lynique COLBERT. TFO Verbout asked COLBERT if it was alright if the canine sniffed her bag. COLBERT replied, "Yes." TFO Verbout asked COLBERT if she would mind setting the bag on the ground so the K-9 could sniff it. COLBERT set a small black leather backpack on the ground. Officer Groshong deployed Rex on the bag. Officer Scott Groshong informed that Rex gave a positive alert to the odor of narcotics on the bag. TFO Verbout asked COLBERT if she had anything in her bag that she was not supposed to have. COLBERT said there was nothing. TFO Verbout asked COLBERT if it was alright to search the bag. COLBERT replied, "Go ahead." TFO Verbout asked Officer Ben Harris to search the bag. I identified myself as a Federal Agent and showed my credentials to COLBERT and assisted Officer Harris as he performed a search.

9. About that time the male started walking towards TFO Verbout and Officer Scott Groshong. TFO Verbout removed his badge and told the male that he was with the Portland Police and asked him if it was alright if the K-9 sniffed his bag. The male replied, "Sure." Officer Verbout asked the male if he would mind setting his bags on the ground so the K-9 could sniff them. The male placed a black leather duffle bag and a black leather backpack on the ground. Officer Scott Groshong deployed Rex on both bags. Officer Scott Groshong told TFO Verbout that his K-9 partner Rex alerted positive to the odor of narcotics on the black leather backpack. TFO Verbout asked the male if he had anything he was not supposed to have

in the bag. The male stated that he did not. TFO Verbout asked the male if he could search the bags. The male replied, "Yeah." Officer Verbout opened the black leather backpack and saw a large amount of US currency that was in bundles. Officer Verbout saw at least 15 bundles and denominations of $5.00's, $10.00's, $20.00's and $100.00's.

10. I left Officer Harris and assisted TFO Verbout as he located the U.S. Currency. I identified myself to the male individual as a Federal Agent and showed him my credentials and asked to look at his boarding pass, which he handed to me. I then asked for identification and the male provided me with a Texas identification card # XXXX3757 issued to D█████ K█████ C. I observed the name on the boarding pass matched the name the Texas identification card and returned the items back to the male.

11. Officer Ben Harris informed TFO Verbout that he located prescription pills in COLBERT's purse and a wad of US Currency. Officer Harris also stated that COLBERT stated she was travelling with the male individual. TFO Verbout asked the male if there was any drugs in the bag or just US currency. The male stated there was only US Currency in the bag. TFO Verbout asked the male how much US currency was in the bag. The male stated there was approximately $50,000.00 in the bag. The male told TFO Verbout that he was in Portland to purchase an 18 wheeler and that the US currency was for that and to purchase merchandise at the Nike employee store. The male told TFO Verbout that he and COLBERT each checked two bags for the flight from Houston, TX to Portland, OR. The male provided his plane ticket / baggage tags that was in the name of K█████ D█████ TFO Verbout explained that he wanted to search the bags in depth to make sure there were no drugs in the bags and count the US currency. TFO Verbout explained that he did not want to pull all of the US currency out in front

of the public and asked the male if he would mind going to the Port of Portland Police Office. The male replied, "That's fine."

12. TFO Verbout, Officer Ben Harris and I walked the male and COLBERT up to the Port of Portland Police Office. Officer Scott Groshong, Port of Portland Police Officer Tim Osario and Port of Portland Police Sgt. Hemsworth retrieved the male's and COLBERT's checked luggage and brought it to the Port of Portland Police Office. TFO Verbout asked permission from the male and COLBERT if it was alright to search the luggage to make sure there was no other US currency or drugs in the bags. Both the male and COLBERT gave permission to search the 4 bags of checked luggage. The bags were four large roller style suitcases. Officer Scott Groshong opened the bags. All four bags were completely empty. All four bags had an overwhelming odor of cologne when the bags were opened that filled the room. The male stated to TFO Verbout that he and COLBERT were stopped by TSA when boarding the plane in Texas and they already had counted the money and took photographs of it.

13. A search of the male's black backpack revealed $104,997.00 in US currency which was rubber banded in approximately 20 bundles and a black Wells Fargo bank bag that contained an additional $4,125.00 US currency. The male's black duffle bag contained clothing. COLBERT's small black duffle bag contained 3 white oval pills in a plastic bag marked M367 which were suspected hydrocodone and 6 yellow bar pills that were broken up imprinted with R039 suspected to be Alprazolam. TFO Verbout told the male and COLBERT that they were being detained and going to be placed in a holding cell. A search of the male's person revealed a large wad of US currency totaling $711.00 US in his right front pants pocket.

14. Officer Ben Harris processed the evidence as TFO Verbout and I conducted the interviews. TFO Verbout brought COLBERT into the interview room. TFO Verbout read

COLBERT her Miranda Warning. When TFO Verbout asked COLBERT if she understood her rights she replied, "Yeah I understand," at 1236 hours.

15. At first COLBERT stated that she and the male who she referred to as "Femi" were in Portland to go to an auction and they were going to buy a car. COLBERT told Officer Verbout that it was her birthday and she overheard Femi tell someone on the phone that he was going to buy a car for someone's birthday and she assumed it was for her. COLBERT also told Officer Verbout that Femi was going to purchase an 18-wheeler. COLBERT stated Femi flips cars to make money. COLBERT stated while in town she and Femi were also going to go to the Nike Employee store and purchase items to take back to Houston, TX to sell.

16. TFO Verbout and Special Agent Gino both explained to COLBERT that they did not believe her story. TFO Verbout explained that he believed that COLBERT and Femi were in Oregon to purchase marijuana. COLBERT then said that she assumed they were going to purchase marijuana. TFO Verbout asked COLBERT why she assumed they were going to purchase marijuana. COLBERT stated that on their trip two weeks ago she saw a bank bag that contained US currency. COLBERT stated that they actually stayed at a motel and only stayed for one night. COLBERT stated Femi would leave the hotel room from time to time to talk on the phone but that he never left the hotel without her. COLBERT stated that Femi never picked up any marijuana and she assumed that they were coming back now to get it. COLBERT stated on the trip two weeks prior she only had one checked bag that was a larger roller style bag. COLBERT stated that the bag was very light when they brought it to Portland and was equally as light when they took it back to Texas. COLBERT was placed back in a holding cell. Special Agent Gino asked COLBERT if it was alright to look through her cellular phone to verify her story. COLBERT said, "Go ahead."

17. TFO Verbout and I brought Femi into the interview room. TFO Verbout read him his Miranda Warning. When TFO Verbout asked him if he understood his rights the male replied, "Yes,".

18. During the interview I was looked at the male's plane ticket and Texas Identification that was in the name of K▓▓▓ D▓▓▓ The photograph did not look like the male we were talking to. I located a Texas Driver license in the male's wallet which was in the name Adefemi O. ADEKEYE. After realizing that ADEKEYE had boarded a plane and flew under the name of K▓▓▓ D▓▓▓ which was not his true identity, ADEKEYE was placed back into a holding cell to check him for any warrants. (Through investigation, I later learned that K▓▓▓ C. D▓▓▓ is an actual individual, with Texas Identification # XXXX3757. See photo below.)



19.     While waiting for the checks on ADEKEYE TFO Verbout looked through COLBERT's cellular phone. TFO Verbout noticed in the text messages between COLBERT and ADEKEYE there were multiple conversations about buying and selling "beans" and "Herb." Based on Officer Chris' Verbout's training and experience he believed the conversations were about buying and selling pills and marijuana. The conversation between COLBERT and ADEKEYE and COLBERT talked about a couple of pills to a 100 pills. In one of the text messages COLBERT asked ADEKEYE for a "P for 17." Based on the conversation TFO Verbout believes COLBERT was asked ADEKEYE for a pound of marijuana for $1,700.00. TFO Verbout also noticed two text messages from COLBERT to ADEKEYE at 0710 hours today that said, "Say you was buying me a car for my birthday" and "Cause I said we going to the Nike outlet." TFO Verbout remembered that ADEKEYE had told him that he had already been stopped by TSA in the morning and found it suspicious that COLBERT was telling ADEKEYE what to say about the US currency.

20.     TFO Verbout and I brought COLBERT back into the interview room. TFO Verbout explained to COLBERT what he had found in her cellular phone. After that COLBERT stated she does buy marijuana, Xanax, and "Narco's" from ADEKEYE. COLBERT stated the most marijuana she has ever seen ADEKEYE with in Texas was approximately four to five pounds. COLBERT stated she buys Xanax from ADEKEYE for $4.00 each and the most she has ever bought from him at one time was about 30 pills. COLBERT stated she asked ADEKEYE for 100 pills one time but that she never bought them from him. COLBERT stated ADEKEYE will give her "Narco's" from time to time but she really does not pay for them and it is usually one or two pills. COLBERT stated that they came to Portland two weeks ago to purchase marijuana and ADEKEYE had about $25,000.00 with him. COLBERT stated the deal

never happed and they were returning to get the marijuana this time. COLBERT stated that she found out about this trip on the night of September 6th, 2019 and she and ADEKEYE were in Oregon to purchase marijuana to sell in Texas. COLBERT stated on four or five occasions she has shipped items to Oregon for ADEKEYE. COLBERT stated that she shipped a movie case that was sealed up overnight to Oregon for ADEKEYE while ADEKEYE was at the post office with her. COLBERT agreed that it was odd to ship a movie overnight for $24.00 for someone who was at the post office with her. In COLBERT's cellular phone was also a photo in the text message string between COLBERT and ADEKEYE of a cashier's check made out to James Fowler with an address of 2520 SE 130th Ave. Portland, OR in the amount of $9,500.00. COLBERT stated that none of the US currency that ADEKEYE had in his possession belonged to her. COLBERT was placed back into a holding cell.

21.     TFO Verbout asked COLBERT if he could search and download her cellular phone to preserve the evidence on it. Officer Verbout explained to COLBERT she could refuse consent to search and download the cellular phone. TFO Verbout explained to COLBERT if she refused consent to search the cellular phone he would apply for a search warrant with a judge. TFO Verbout explained that a judge may or may not sign the warrant but if a judge signed the warrant he would search and download the cellular phone. TFO Verbout provided COLBERT with a Search by Consent Form which she signed. TFO Verbout provided COLBERT a business card with his cellular phone number on it.

22.     TFO Verbout and I brought ADEKEYE back into the interview room at approximately 1435 hours. TFO Verbout asked ADEKEYE if he still understood his rights or if ADEKEYE wanted TFO Verbout to read them again. ADEKEYE stated he still understood his rights and did not want TFO Verbout to read them again.

23. TFO Verbout and I explained to ADEKEYE that they believed that he was in Oregon to purchase marijuana and explained some of the facts we discovered. TFO Verbout and I explained to ADEKEYE that we wanted ADEKEYE to tell the truth about what he and COLBERT were doing in Oregon. ADEKEYE started to say that he was in Oregon to purchase an 18-wheeler but then stated he was in Oregon to give an individual named James FOWLER money. ADEKEYE stated that he goes around the Houston, Texas area and collects money for FOWLER . ADEKEYE stated the money is from marijuana that FOWLER sends to people in Houston, Texas. ADEKEYE stated FOWLER ships marijuana to Texas by mail (USPS, FED EX, and UPS). ADEKEYE stated that FOWLER has a guy in Dallas, TX that does the exact same thing that he does and collects money for FOWLER. ADEKEYE stated the guy in Dallas, TX also flies to Portland, OR to meet FOWLER and drop off money.

24. ADEKEYE stated that two weeks ago when he came to Portland, OR, FOWLER came to his hotel. ADEKEYE stated he gave FOWLER approximately $65,000.00 and James Fowler showed him some samples of different strains of marijuana. ADEKEYE stated that about one and a half months ago he collected approximately $25,000.00 for FOWLER and flew in to Portland, OR to give to him. ADEKEYE stated that prior to bringing currency to Portland, OR he would collect money and get cashier's checks to send to FOWLER. ADEKEYE stated that the amounts were getting so large that he would have to pay multiple people to get cashier's checks and it was just better for him to fly the money out.

25. TFO Verbout asked ADEKEYE to search and download his cellular phones to preserve evidence. ADEKEYE said, "Yes," and singed a Search by Consent Form for all three of his cellular phones. Paperwork was completed and one of ADEKEYE's cellular phones was downloaded by TFO Verbout. The cellular phone was released to ADEKEYE.

26. On September 7, 2019, TFO Verbout conducted a forensic exam of the devices. A brief review of the cellular phone's data revealed that all four cellular phones had pictures and videos of marijuana. The pictures and video's ranged from a few grams of marijuana to upwards of a dozen pounds. There were also photographs and pictures of large amounts of US currency on the cellular phones.

27. In conclusion, I believe based off my training and experience that ADEKEYE utilized the identity of another individual to conduct commercial air travel to Portland, Oregon for the sole purchase of purchasing marijuana. Using another individual's identity would allow ADEKEYE to travel undetected and circumvent law enforcement. When ADEKEYE presented me with the identification of another individual, he concealed and covered up by trick, scheme and device a material fact, namely, his true identity.

28. Based on the foregoing information, your affiant respectfully requests that a warrant of arrest be issued for violations of 18 USC § 1001(a)(1) and 18 USC § 1028(a)(7).

29. This affidavit and the requested criminal complaint and arrest warrant were all reviewed by Assistant United States Attorney Craig Gabriel prior to being presented to the Court. AUSA Gabriel informed me that in his opinion, the affidavit sets forth sufficient probable cause to support the issuance of the criminal complaint and arrest warrant.

30. I respectfully request the Court to authorize the attached arrest warrant and criminal complaint.

By Phone

Guy Gino, Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN by telephone to me this **10th** day of December 10, 2019.

*Stacie Beckerman*
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Oregon

| | | |
|---|---|---|
| United States of America<br>v.<br>Adefemi O. ADEKEYE<br><br>Defendant | ) ) ) ) ) ) ) | Case No. 3:19mj234 |

**4:19mj2312**
United States Courts
Southern District of Texas
FILED

## ARREST WARRANT

*December 13, 2019*

David J. Bradley, Clerk of Court

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Adefemi O. ADEKEYE ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☑ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:

Concealing a Material Fact -- 18 U.S.C. 1001(a)(1)
Fraud -- 18 U.S.C. 1028(a)(7)

Date: 12/10/2019

*Issuing officer's signature*

City and state:   Portland, Oregon

Hon. Stacie F. Beckerman, U.S. Magistrate Judge
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*